**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| KHALIL SALLEY, | : | Civil No. 07-4914 (SRC) |
| | : | |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| DAVID RODRIGUEZ, | : | |
| | : | |
| Defendant. | : | |

**APPEARANCES:**
KHALIL SALLEY, Plaintiff <u>Pro Se</u>
#182828
Hudson County Correctional Center
South Kearny, New Jersey  07032


    This matter is before the Court upon Plaintiff Khalil Salley's
(hereinafter"Plaintiff") submission of an amended complaint
(hereinafter "Amended Complaint").  For the reasons stated below,
Plaintiff's Amended Complaint will be dismissed for failure to meet
the color of law requirement.


### STANDARD OF REVIEW

    In 1996, Congress enacted the Prison Litigation Reform Act
("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and
Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321
(April 26, 1996).  Congress's purpose in enacting the PLRA was

"primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous." Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996). A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a claim, or seek monetary relief from immune defendants. However, in determining the sufficiency of a complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Haines v. Kerner, 404 U.S. 519, 520 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court should "accept as true all of the allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, lend credit to a pro se plaintiff's "bald assertions" or "legal conclusions." Id. Thus, "[a] pro se complaint may be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981) (quoting Haines, 404 U.S. at 520).

2

**DISCUSSION**

I.   **Procedural Background**

On October 11, 2007, the Clerk of the Court received the following documents from Plaintiff, an inmate currently detained at Hudson County Correctional Center. <u>See</u> Docket Entry No. 1. The document consisted of: (a) one-page Complaint against defendant, David Rodriguez (hereinafter "Defendant"), reading, "[e]veryone has the right of equal access to public services in [t]his country, everyone[,] as a member of society, has the right to social security and is entitled to realization through national effort and international co[]operation and in accordance with the organization and resources of each state, of the economic, social and cultural rights indispensable for his dignity and the free development of personality"; (b) a civil cover sheet alleging "racial derelict" and seeking the remedy of "justice"; (c) Plaintiff's affidavit of poverty, together with his prison account statement; (d) summons page directing Defendant to reply to Plaintiff; and (e) Plaintiff's request for waiver of service of summons.

Shortly prior to initiating this action, Plaintiff initiated seven other actions in this District (hereinafter, collectively, "Other <u>Salley</u> Actions") by submitting nearly identical sets of documents in each of these actions. <u>See Salley v. Trowbridge</u>, 07-4570 (JAG) (hereinafter "<u>Trowbridge</u> Action"); <u>Salley v. Kenny</u>, 07-4895 (SRC) (hereinafter "<u>Kenny</u> Action"); <u>Salley v. Peterson</u>, 07-

3

4895 (SRC) (hereinafter "Peterson Action"); Salley v. Gillen, 07-4910 (SRC) (hereinafter "Gillen Action"); Salley v. Goodman, 07-4911 (SRC) (hereinafter "Goodman Action"); Salley v. O'Brien, 07-4912 (SRC) (hereinafter "O'Brien Action"); Salley v. Nestor, 07-4913 (SRC) (hereinafter "Nestor Action").

On October 25, 2007, the Court issued an Order (hereinafter "October 25 Order"): (a) directing the Clerk to administratively terminate this action, without filing the Complaint or assessing a filing fee; and (2) notifying Plaintiff that he may have this case reopened if, within 30 days of the date of the entry of the Order, he submits to the Clerk a complaint satisfying the requirements of Rule 8(a) of the Federal Rules of Civil Procedure. See Docket Entry No. 1. In all substantive respects, the October 25 Order was identical to analogous orders issued by this Court in Plaintiff's Kenny, Peterson, Gillen, Goodman, O'Brien and Nestor Actions (hereinafter, collectively, "SRC Orders"). With respect to Plaintiff's Trowbridge Action, Judge Greenaway issued an analogous order (hereinafter "JAG Order") differing from the SRC Orders solely in that respect that the JAG Order expressly granted Plaintiff in forma pauperis status (hereinafter "IFP Status"). See Trowbridge Action, Docket Entry No. 2. In view of: (a) Judge Greenaway's grant of the IFP Status to Plaintiff; and (b) this Court's conclusion reached in SRC Orders that Plaintiff's submissions in the instant matter, as well as in his Kenny,

_Peterson_, _Gillen_, _Goodman_, _O'Brien_ and _Nestor_ Actions, failed to
meet the pleading requirements of Rule 8 warranting administrative
termination, this Court directed the Clerk: (a) not to file
Plaintiff's submissions in the instant matter, as well as in his
_Kenny_, _Peterson_, _Gillen_, _Goodman_, _O'Brien_ and _Nestor_ Actions, and
(b) not to initiate collection of applicable filing fees with
respect to the instant matter, as well as in his _Kenny_, _Peterson_,
_Gillen_, _Goodman_, _O'Brien_ and _Nestor_ Actions.

On October 31, 2007, the Court received Plaintiff's Amended
Complaint, _see_ Docket Entry No. 3, the content of which is detailed
below. Consequently, on December 20, 2007, this Court issued an
order: (a) directing the Clerk to file the Amended Complaint and to
reopen the instant matter for the purpose of screening the same;
and (b) granting Plaintiff IFP Status for the purpose of his
prosecution of the instant action; and (c) directing the Clerk to
initiate collection of applicable filing fees with respect to the
instant matter. _See_ Docket Entry No. 4.


**II. Plaintiff's Amended Complaint**

The Amended Complaint is a seven-page pre-printed § 1983 form,
partially completed by Plaintiff. _See_ Docket Entry No. 3.
Specifically, the Amended Complaint is silent with respect to the
questions posed in Subsections 4(b) and 4(c), _i.e._, "Defendant -
name[?]" "[Defendant's] Official position[?]" "[Defendant's] Place

5

of employment[?]" and "How is this person involved in the case (i.e., what are you alleging this person did or did not do that violated your constitutional rights?)," leaving this Court to guess Plaintiff's intended answers to these questions.[1]

The silence, however, is broken in Section 6.  See id. § 6. Describing the factual circumstances underlying his claim, Plaintiff alleges that, on an unspecified day in May of 2006, Plaintiff (being, apparently, a recipient of unemployment benefits from the State of New Jersey) arrived at a Hudson Street, Jersey City, branch office of Wachovia Bank (hereinafter "Hudson Street Office") for the purpose of cashing his unemployment benefits check.  See id.  According to Plaintiff, the teller at Wachovia Bank asked Plaintiff to present Plaintiff's identification and, upon examination of both the identification and the check, refused to cash the check stating that, in the teller's opinion, "the check was not right."  Id.

---

[1] The Court presumes that David Rodriguez is the name of the first Defendant in this action, since Plaintiff used the name "David Rodriguez" while completing the entries in the caption section of the Amended Complaint.  Moreover, since Plaintiff entered "Wachovia Bank" in the caption right underneath the name "David Rodriguez," the Court concludes that this entry indicates Plaintiff's desire to name Wachovia Bank as the second Defendant in this matter.  The Court, however, cannot make any intelligible presumptions or deductions with respect to any other inquiries contained in Subsections 4(b) and (c).

Next day, Plaintiff visited Wachovia branch office located near Newport Center Mall (hereinafter "Newport Office"), where Plaintiff had an open bank account.[2]  According to Plaintiff, his "check was cashed but [an unspecified] 'someone' from the corporate [sic.] stated [to Plaintiff that his] business was not wanted at Wachovia Bank and [his] account was terminated," apparently: (a) right after cashing his unemployment benefits check, and (b) with full return of funds then existing on Plaintiff's Wachovia account to Plaintiff.  Id.

The Amended Complaint informs the Court that--during his visit to the Hudson Street Office--Plaintiff was wearing: (a) a "headrag," i.e., a piece of fabric made of spandex and wrapped around his head, also known under the term "do-rag"; (b) a "braided" hairdo;[3] and (c) an outfit, which Plaintiff described as "urban clothing."[4]  See id.  The Amended Complaint does not

_____

[2]

Plaintiff's Amended Complaint is silent as to the particular nature of the account he had with Newport Office of Wachovia.

[3]

Plaintiff, an African-American, wears short dreadlocks.  See <<https://www6.state.nj.us/DOC_Inmate/details?x=1021783&n=0>>.

[4]

Plaintiff did not elaborate on his understanding of the term "urban clothing."  Usually, the term implies a hip-hop type of fashion that originated with the African-American youth and later influenced by the hip-hop scenes of United States large cities. The style is characterized by baggy pants made of heavy denim, typically worn without a belt and sagged so low as to cause exposure of one's underwear, as well as by shirt tails outside one's pants.  "According to some accounts, the trend originated among prison inmates who had lost access to belts, and then spread

elaborate on Plaintiff's appearances during his visit to the Newport Office of Wachovia, see id., leaving the Court to guess whether Plaintiff elected to come to the Newport Office wearing an outfit analogous to that worn by him to the Hudson Street Office or decided to change his attire for visiting the Newport Office.

Plaintiff alleges that Wachovia's decision to terminate Plaintiff's bank account was: (a) based on his "style of dress, race, and willingness to complain about the services of Wachovia Bank";[5] and (b) violated Plaintiff's civil rights. See id. § 7. Plaintiff seeks the relief of "justice," without elaborating on the particularities of the remedy he would like to obtain. See id.

### III. Plaintiff's Allegations Fail to State a Cognizable Claim

To recover against a defendant under 42 U.S.C. § 1983, a plaintiff must establish that the defendant acted under "color of [state] law" to deprive him of a right secured by the federal

---

to Southern California's gang culture in the early 1990s." Michele Munz and Stephen Deere, I see Paris, I see France, I see Pine Lawn enact . . . A ban on saggy pants, St. Louis Post-Dispatch, Missouri, (Nov. 14, 2007).

[5]
The Court is not entirely clear as to what "complaining" activity Plaintiff is referring to. The Court guesses that Plaintiff is referring to the argument he, apparently, had with the teller at the Hudson Street Office who refused to cash Plaintiff's unemployment benefit check.

Constitution or laws.[6]  See Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  Section 1983 does not create substantive rights; rather, it provides an avenue of recovery for the deprivation of established federal constitutional and statutory rights.  See id. at 633.

"The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law." Id. at 638.  The color of state law element in a section 1983 action requires that "the conduct allegedly causing the deprivation of [the plaintiff's rights] be fairly attributable to the State." Lugar v. Edmonson Oil Co., 457 U.S. 922, 937 (1982).  For the conduct to be "fairly attributable" to the State, (1) the deprivation must be caused by (a) the exercise of some right or privilege created by the State, or (b) by a rule of conduct imposed by it or by a person for whom the State is responsible, and (2) the defendant must be a person who may fairly be said to be a state actor, either because the person (a) is a state official, (b) acted

---

[6]

Section 1983 provides in relevant part that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

9

together with or has obtained significant aid from state officials, or (c) performed conduct otherwise chargeable to the State.  Id.

The United States Supreme Court has articulated several instances where a private party's actions may be fairly attributed to state action, including when: (1) it results from the State's exercise of "coercive power"; (2) the State provides significant encouragement, either overt or covert; (3) a private actor operates as a willful participant in joint activity with the State or its agents; (4) a nominally private entity is controlled by an agency of the State; (5) a private entity has been delegated a public function by the State; or (6) the private entity is entwined with governmental policies, or the government is entwined in its management or control.  Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n, 531 U.S. 288, 296 (2001) (internal quotations and citations omitted).  The Court, in deciding whether a particular action or course of action by a private party is governmental in character, must examine: (1) the extent to which the actor relies on governmental assistance and benefits; (2) whether the actor is performing a traditional public function; and (3) whether the injury caused is aggravated in a unique way by the incidents of governmental authority.  See Edmonson v. Leesville Concrete Co., 500 U.S. 614, 621 (1991).

In the case at bar, Plaintiff does not indicate how the Newport Office of Wachovia Bank operated under the color of law.[7] The Complaint contains no statement suggesting even a remote connection between the government officials and Wachovia, or its owners, or its staff.

Moreover, even if the Court were to factor in the consideration that any bank, including Wachovia, is a creature of legislature, and all powers a bank can lawfully exercise are prescribed by its charter and by statute, this generalized consideration applicable to all financial institutions in the United States would not render the decision by the Newport Office to terminate Plaintiff's Wachovia account a "state action." Accord Tomaiolo v. Mallinoff, 281 F.3d 1 (1st Cir. 2002) (finding that summary judgment was proper in § 1983 action by taxpayers who paid taxes to escrow agents and who were for a period of time required to make annual rather than quarterly tax payments to escrow agents, thus losing interest in escrowed funds, because escrow defendants were not acting under state law); Mitchell v. Kirk, 20 F.3d 936 (8th Cir. 1994) (dismissing a § 1983 action by a prisoner against a bank and bank employees, since the bank and its employees were not acting under color of state law when they opened an account

---

[7] A fortuori, Plaintiff does not allege that Defendant Rodriguez was a state actor, since both the original and the Amended Complaints are consistently silent with respect to Defendant Rodriguez. See generally, Docket Entries Nos. 1, 3.

that yielded zero interest); Lally v. Crawford County Trust & Sav. Bank, 863 F.2d 612 (8th Cir. 1988) (affirming the decision of a district court dismissing a debtor's § 1983 claim against bank for lack of state action, where the debtor's only claim was based on allegation that bank employee acted under color of state law when he threatened to have the debtor put in jail for account overcharge); Gibson v. Dixon, 579 F.2d 1071 (7th Cir. 1978) (a bank's use of state statutory procedure for selling automobile after it was repossessed by the bank does not constitute state action under § 1983); Fletcher v. Rhode Island Hosp. Trust Nat'l Bank, 496 F.2d 927 (1st Cir. 1974) (no state action was involved in banker's setoff without notice or hearing against deposit funds of depositors who owe indebtedness arising from use of bank credit cards); Bichel Optical Laboratories, Inc. v. Marquette Nat'l Bank, 487 F.2d 906 (8th Cir. 1973) (seizure by bank of plaintiff's funds and collateral in form of accounts receivable without foreclosure or notice is not act under color of state law cognizable under § 1983, since the state was not so significantly involved itself in procedures followed by bank as to constitute act under color of law); Roemer v. Security Bancshares, 978 F. Supp. 988 (D. Kan. 1997) (a mortgagor's § 1983 complaint against bank and bank officials was dismissed where the mortgagor alleged that the foreclosure action against him was attempt to perpetuate apparently illegal lending practices of bank in violation of his

12

constitutional rights, because complaint included no allegations of involvement of any state actors or any facts showing that defendants acted "under color of state law"); Lundt v. Hodges, 627 F. Supp. 373 (N.D. Iowa 1985) (Section 1983 plaintiff failed to state cause of action against auctioneers, implement dealers and a banker, where the plaintiff alleged no facts showing that such defendants were acting under color of state law); Nesglo, Inc. v. Chase Manhattan Bank, N.A., 506 F. Supp. 254 (D.P.R. 1980) (allegations in complaint fail to state action under color of law where they merely recite that national banking association and its officers are members of regulated entities that invoked local court process resulting in attachment of plaintiff's goods in satisfaction of defaulted note or previous unpaid extensions of credit granted by bank).

Since it is well established that an action taken by a private entity constitutes state action only when "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself," Brentwood Academy v. Tennessee Secondary School Athletic Ass'n., 531 U.S. 288, 295 (2001) (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974)), and, without more, an action by a private entity existing pursuant to statutory authorization retains its private character and cannot present actionable grounds under Section 1983, see American Manufacturers Mutual Insurance Co.

13

v. Sullivan, 526 U.S. 40, 50 (1999); Lugar, 457 U.S. at 939; Flagg
Bros., Inc. v. Brooks, 436 U.S. 149, 164-65 (1978), this Court is
restrained to dismiss Plaintiff's Amended Complaint for failure to
state facts indicating that Wachovia's termination of Plaintiff's
bank account was an act having a close nexus with the State.

The Court, therefore, need not reach Plaintiff's allegations
that Wachovia's termination of his bank account was an act of
discrimination based of Plaintiff's race, or a violation of
Plaintiff's right to symbolic speech, or a retaliation for
Plaintiff's exercise of his free speech rights.[8]

_____

[8] The Court, however, notes in passing that--had the Court
reached the First and Fourteenth Amendments issues, or had
evaluated the claim under 28 U.S.C. § 1981, Plaintiff's Amended
Complaint would be similarly dismissed, since it *fails to allege
any facts* indicating that Wachovia Bank terminated Plaintiff's
account because: (a) Wachovia's practice was to terminate accounts
of African-Americans while keeping accounts of members of other
races and/or ethnicities open, see Bradley v. United States, 299
F.3d 197, 205 (3d Cir. 2002) (colorable claim for race-based
discrimination must be established by showing that defendant's
actions "(1) had a discriminatory effect, and (2) were motivated by
a discriminatory purpose"); or because (b) Wachovia aimed to
regulate the content of Plaintiff's symbolic speech rather than
being reasonably concerned about its business decorum, see Clark v.
Community for Creative Non-Violence, 468 U.S. 288, 293 (1984) (
"[e]xpression, whether oral or written or symbolized by conduct, is
subject to reasonable time, place, and manner restrictions . . .
provided that they are justified without reference to the content
of the regulated speech"); or because (c) Wachovia sought to
retaliate against Plaintiff for his argument with Wachovia teller,
since that argument (as to whether Plaintiff's unemployment
benefits check was a properly tendered negotiable instrument) could
not qualify as a constitutionally protected speech within the
meaning of the tests set forth in Mt. Healthy Bd. of Ed. v. Doyle,
429 U.S. 274, 287 (1977), and Ambrose v. Township of Robinson, Pa.,
303 F.3d 488, 493 (3d Cir. 2002).

## CONCLUSION

For the reasons set forth above, Plaintiff's Amended Complaint will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted.

An appropriate order accompanies this Opinion.

_____
**STANLEY R. CHESLER**
**United States District Judge**

Dated: 01/03/08

15